UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN KASHON HERRING,

      Plaintiff,

v.                                                    Case No.:  2:21-cv-322-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

Plaintiff Kevin Kashon Herring filed a Complaint on April 19, 2021.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying his claim for supplemental security
income.  The Commissioner filed the transcript of the administrative proceedings
(hereinafter referred to as "Tr." followed by the appropriate page number), and the
parties filed a joint memorandum detailing their respective positions.  (Doc. 28).  For
the reasons set forth herein, the decision of the Commissioner is **REVERSED AND
REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a
continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed an application for supplemental security income on May 13, 2019, alleging a disability onset date of April 13, 2019.  (Tr. at 15).[1]  The claim was denied initially on July 18, 2019, and upon reconsideration on October 22, 2019.  (*Id*.).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and ALJ Eric Anschuetz held that hearing on August 5, 2020.  (*Id*. at 30-68).  ALJ Anschuetz issued an unfavorable decision on September 15, 2020.  (*Id*. at 12-25).  On February 23, 2021, the Appeals Council denied Plaintiff's request for review.  (*Id*. at 1-6).  Plaintiff then filed his Complaint with this Court on April 19, 2021, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes.  (Docs. 17, 20).  The matter is, therefore, ripe for the Court's review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 13, 2019, the application date.  (Tr. at 17).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  "status-post left ACL microfracture with reconstruction surgery in August 2019 and obesity (20 [C.F.R. §] 416.920(c))."  (*Id*.).  At step three, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 416.920(d), 416.925 and 416.926)."  (*Id*. at 18).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except lift/carry 20 occasionally and 10 pounds frequently. Stand and/or walk a total of six hours in an eight-hour workday. Sit for six hours in an eight-hour workday. Never climb ladders or scaffolds. He can occasionally climb ramps and stairs. Unlimited ability to balance. He can frequently stoop; and occasionally kneel, crouch and crawl. He must avoid concentrated exposure to environmental heat and cold. He must avoid exposure to dust, odors, fumes and gases. Must avoid workplace hazards such as unprotected heights and unshielded rotating machinery. No mental health limitations. He must have the option to alternate sitting and standing at a maximum of 30-minute intervals while remaining at his workstation.

(*Id.* at 19). The ALJ also determined that Plaintiff "is unable to perform any past relevant work (20 [C.F.R. §] and 416.965)." (*Id.* at 23).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 416.969 and 416.969(a))." (*Id.* at 24). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: electronics worker (Dictionary of Occupational Titles ("DOT")# 726.687-010); small product assembly (DOT# 739.687-030); and production assembler (DOT# 706.687-010). (*Id.* at 24-25). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined

in the Social Security Act, since May 13, 2019, the date the application was filed (20 [C.F.R. §] 416.920(g)).″  (*Id.* at 25).

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises two issues.  As stated by the parties, the issues are:

1.     Whether the ALJ was required to consider a request by Plaintiff's counsel to reopen a previous ALJ denial dated April 17, 2019, based on vocational expert testimony adduced at the 2020 hearing; and

2.     Whether the decision in this case, by an ALJ and Appeals Council [("AAJ")] deriving their authority from the Commissioner who was not constitutionally appointed, is constitutionally defective, requiring remand.

(Doc. 28 at 3, 15).  The Court finds it appropriate to address the issues in a more logical order.  Accordingly, the Court first addresses the parties' second issue— whether the decision in this case is constitutionally defective, requiring remand. Next, the Court considers the parties' first issue—whether the ALJ was required to consider a request by Plaintiff's counsel to reopen a previous ALJ denial dated April 17, 2019.

### A.     Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff essentially argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the

separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 28 at 15-17 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))). To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional. (*See id.* at 16-17). For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in Plaintiff's case and to the Appeals Council Judges, Plaintiff's claim was adjudicated by individuals who "had no lawful authority to do so." (*See id.* (citations omitted)). Plaintiff also asserts that his claim was decided under "a presumptively inaccurate legal standard" because Commissioner Saul issued regulations under which Plaintiff's application was decided. (*Id.*).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (*id.* at 17-18 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 18-24 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner argues that even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, Plaintiff cannot show that the removal restriction inflicted compensable harm on him. (*Id.* at 18-24). In asserting this argument, the Commissioner maintains ALJ Anschuetz held office under an appointment ratified by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ Anschuetz's decision and the removal provision. (*See id.* at 20 n.7 (citations omitted)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 24-25 (citations omitted)), the *de facto* officer doctrine, (*id.* at 25-26 (citations omitted)), the rule of necessity (*id.* at 26-27 (citations omitted)), and broad prudential considerations, (*id.* at 27-28 (citations omitted)).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency

("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the unconstitutional removal provision in *Collins* from similar appointment provisions, *see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1788-89. To that point, the *Collins* Court listed examples of how compensable harms might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 18 at 17-18 (citing Constitutionality of the Commissioner of Social Security's Tenure

Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))).  However, despite the parties' agreement, the Court need not determine the constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision.  In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.  Accordingly, the Court assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the ALJ's decision in this case.  (*See* Doc. 18 at 15-17).  On the other hand, the Commissioner has raises a host of arguments, none of which Plaintiff has responded to, as to why Plaintiff's rehearing request should be denied.  (*See id.* at 17-28).

Here, the Court agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons:  (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed him.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Court is not persuaded by Plaintiff's broad

10

argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate." (*See* Doc. 18 at 15-17).  Rather, like the offending provision in *Seila Law*, the Court finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision.  *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act).  Thus, the Court finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," Plaintiff here has not identified how the removal provision at issue caused him compensable harm. *See Collins*, 141 S. Ct. at 1788-89.  The Court has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff.  For example, Plaintiff has not shown that the President was unable to remove Mr. Saul as a result of the alleged unconstitutional tenure, undermining the existence of a nexus between the provision and the unfavorable decision.  Similarly, Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council

level.  Finally, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill.  Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the Court's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Court finds that the removal provision does not necessitate remand or a rehearing of Plaintiff's claim.  *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at *5, *report and recommendation adopted,* 2022 WL 61217 (holding that remand based on the

allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

### B.   Whether the ALJ Was Required to Consider a Request by Plaintiff's Counsel to Reopen a Previous ALJ Denial.

The next issue necessitates a brief review of the procedural history in this case.

Plaintiff previously applied for supplemental security income benefits on October 26, 2017.  (Tr. at 184).  This application was denied initially on January 3, 2018, and upon reconsideration on March 2, 2018.  (*Id.*).  Plaintiff filed a written request for hearing before an ALJ on March 9, 2018, and ALJ Raymond Rodgers held that hearing on February 19, 2019.  (*Id.* at 69-96).  Following the hearing, ALJ Rodgers issued an unfavorable decision on April 17, 2019.  (*Id.* at 181-205).

Following this decision, and as addressed above, Plaintiff filed a second application for supplemental security income on May 13, 2019.  (*Id.* at 15).  The claim was denied initially on July 18, 2019, and upon reconsideration on October 22, 2019.  (*Id.*).  Thereafter, Plaintiff requested a hearing before an ALJ and ALJ Eric Anschuetz held that hearing on August 5, 2020.  (*Id.* at 30-68).  ALJ Anschuetz issued an unfavorable decision on September 15, 2020.  (*Id.* at 12-25).

13

The same vocational expert ("VE") testified at both the August 5, 2020 hearing, held before ALJ Anschuetz, and the February 19, 2019 hearing, held before ALJ Rodgers. (*See id.* at 30-96).

At the February 19, 2019 hearing, ALJ Rodgers posed a hypothetical to the VE that contained the limitations that ultimately comprised Plaintiff's RFC. (*Id.* at 90-91). The VE testified that a person with these limitations could perform the positions of: (1) order clerk, food and beverage; (2) final assembler; and (3) semi-conductor. (*See id.*). ALJ Rodgers relied on this testimony at step five of the sequential evaluation and, therefore, found Plaintiff had not been disabled since October 26, 2017, the date the application had been filed. (*Id.* at 198-99).

By contrast, at the August 5, 2020 hearing, ALJ Anschuetz posed an identical hypothetical to the same VE. (*Id.* at 59-60). At that time, however, the VE testified that the limitations would be work preclusive. (*Id.*). ALJ Anschuetz addressed the VE's inconsistent testimony and the VE clarified that the August 5, 2020 testimony – that the limitations would be work preclusive – was correct and that his February 19, 2019 testimony was either a mistake or the result of misunderstanding the hypothetical. (*Id.* at 65-66). Based on this, Plaintiff's counsel moved to reopen the prior decision and requested that the testimony be considered new and material evidence. (*Id.* at 67). In response, ALJ Anschuetz stated that he "very well may reopen the prior decision based on that, but that doesn't mean [he would] agree one way or the other with that . . . RFC." (*Id.*). Yet, he noted that the evidence was material and that he would consider it and let counsel know what he would do. (*Id.*).

14

Despite this promise, ALJ Anschuetz failed to address this issue in his decision.  (*See id.* at 15-25).

Against this background, Plaintiff essentially asserts that given the VE's testimony at the August 5, 2020 hearing, ALJ Anschuetz was required to consider a request to reopen a previous application.  (*See* Doc. 28 at 3-17).  Plaintiff argues that had ALJ Anschuetz reopened the decision, Plaintiff would have been found disabled at least through the date of the prior decision because ALJ Anschuetz could not change the prior RFC and the VE's testimony shows that the RFC was work preclusive.  (*Id.* at 9).  Plaintiff maintains that, as a result, the instant case would involve a cessation of benefits, which places the burden on the Commissioner to demonstrate an improvement in Plaintiff's condition.  (*Id.* at 9-10 (citations omitted)).  Plaintiff contends that the Court cannot undertake the cessation analysis itself because it "does not reweigh facts and/or perform legal analysis missing from the ALJ's decision itself."  (*Id.* at 10 (citations omitted)).  Nevertheless, Plaintiff argues that even if the Court were to undertake the cessation analysis, remand would be warranted considering the medical evidence of record.  (*See id.* at 10-13 (citations omitted)).

In response, Defendant argues that the Court does not have subject matter jurisdiction over ALJ Anschuetz's decision not to reopen Plaintiff's prior claim unless there is a colorable constitutional challenge.  (*Id.* at 13-14 (citing *inter alia Califano v. Sanders*, 430 U.S. 99, 108 (1977))).  Defendant further contends that any colorable constitutional challenge must relate to the reopening request itself, not

claims related to the prior decision.  (*Id.* at 14-15 (citing *Cherry v. Heckler*, 760 F.2d

1186, 1190, n.4 (11th Cir. 1985))).  Defendant maintains that "Plaintiff does not

allege any colorable constitutional violation occurring with respect to the reopening

request procedures that would warrant a review of the ALJ's decision not to reopen

his prior application."  (*Id.* at 14).  Thus, Defendant contends that the Court does not

have jurisdiction to review ALJ Anschuetz's decision not to reopen the prior

decision.  (*Id.*).

      Generally, federal courts do not have subject matter jurisdiction to review an

ALJ's decision not to reopen a prior administrative decision, absent a colorable

constitutional challenge.  *See* 42 U.S.C. § 405(g); *Califano,* 430 U.S. at 107-09; *Wolfe v.*

*Chater,* 86 F.3d 1072, 1078-79 (11th Cir. 1996).  The Eleventh Circuit has held that

courts also have jurisdiction over an ALJ's decision not to reopen a prior decision

where there has been a *de facto* reopening of the previous decision.  *Cherry v. Heckler,*

760 F.2d 1186, 1189 (11th Cir. 1985).  A *de facto* reopening occurs when a previous

administrative decision is "reconsidered on the merits to any extent and at any

administrative level."  *Id*.

      Here, the Court begins by noting that ALJ Anschuetz did not explicitly

address Plaintiff's request to reopen the prior decision.  (*See* Tr. at 15-25).  Indeed, he

made no mention of the request or the conversation that preceded it.  (*See id.*; *see also*

*id.* at 63-67).  Nevertheless, by finding that Plaintiff was not disabled since May 13,

2019, the date the current application was filed, (*see id*. at 25), ALJ Anschuetz

implicitly denied the request to reopen.  As noted above, however, the Court is without jurisdiction to review this decision unless one of the exceptions applies. Plaintiff fails to explicitly address whether either exception applies, (*see* Doc. 28 at 8-13), and Defendant addresses only whether Plaintiff raises a colorable constitutional challenge—arguing that he does not, (*id.* at 13-15).

Upon review, the Court agrees with Defendant that Plaintiff has not raised a colorable constitutional challenge.  (*See id.*; *see also* at 8-13).  Plaintiff has not identified, and the Court has not found, any constitutional defect in the procedures by which ALJ Anschuetz denied the request to reopen or any deprivation of due process at any point during either the October 26, 2017 application's determination process or the May 13, 2019 application's determination process.

However, the Court finds that ALJ Anschuetz constructively – or *de facto* – reopened the prior decision at the August 5, 2020 hearing.  As noted above, a *de facto* reopening occurs when a previous administrative decision is "reconsidered on the merits *to any extent* and at any administrative level."  *Cherry,* 760 F.2d at 1189 (emphasis added).

Here, the ALJ clearly reconsidered the VE's prior testimony on its merits.  (*See* Tr. at 63-67).  Specifically, when the VE provided testimony to ALJ Anschuetz that was inconsistent with the testimony that the same VE provided to ALJ Rodgers at the February 19, 2019 hearing, ALJ Anschuetz confronted the VE regarding the inconsistency.  (*See id.*).  In so doing, ALJ Anschuetz noted that the prior testimony formed the basis of ALJ Rodgers' ultimate conclusion of not disabled.  (*See id.* at 65).

ALJ Anschuetz proceeded to determine whether, in fact, a person with the limitations imposed by the hypothetical – and the prior RFC – could perform work that exists in significant numbers in the national economy. (*Id.* at 65-66). According to the VE's testimony – which he confirmed was inaccurate at the February 19, 2019 hearing – work did not exist in significant numbers. (*See id.* at 60, 65-66). Given this conversation, the Court finds that ALJ Anschuetz reconsidered on the merits the prior decision to some extent, resulting in a *de facto* reopening of the prior claim. *See Cherry,* 760 F.2d at 1189.

In reaching this finding, the Court finds the Eleventh Circuit's decision in *Wolfe v. Cater*, 86 F.3d 1072 (11th Cir. 1996) sufficiently analogous. In *Wolfe*, the Eleventh Circuit determined that a reopening had occurred when "[t]he third ALJ[ determined] that the other two ALJs had mischaracterized [the plaintiff's] educational level as 'limited,' when it was actually 'marginal.'" *Id.* at 1079. Specifically, the Eleventh Circuit concluded that "[b]y determining that the first two ALJs had erred, the third ALJ went beyond evaluating evidence for the purpose of making a reasoned determination of its *res judicata* effect" and had instead reconsidered the merits of the prior decision with regard to the plaintiff's education level. *Id.*

Here, as in *Wolfe*, ALJ Anschuetz considered the accuracy of the basis of the ALJ's ultimate conclusion. (*See* Tr. at 63-67). In so doing, ALJ Anschuetz impliedly considered the accuracy of the ultimate conclusion. (*See id.*). Put simply, by noting

that ALJ Rodgers based his decision on the VE's testimony and by confirming that the testimony on which ALJ Rodgers relied was inaccurate, ALJ Anschuetz necessarily found – and the VE necessarily agreed – that ALJ Rodgers' prior decision was factually unsupported and incorrect. (*See id.*). This finding is bolstered by the ALJ's apparent agreement that the evidence is new and material to the prior decision. (*See id.* at 67). The net result is that although ALJ Anschuetz did not explicitly determine that the prior decision was incorrect, as the ALJ in *Wolfe* did, he nonetheless considered the prior decision on its merits to some extent. (*See id.* 63-67). As a result, the decision was *de facto* reopened to an extent. *See Wolfe*, 86 F.3d at 1079. Accordingly, the Court has jurisdiction to review ALJ Anschuetz's implied decision not to reopen the prior decision. *See id.*

Having established that the Court has jurisdiction to review the implied decision not to reopen the prior decision, the Court next considers whether the decision can be affirmed. Here, ALJ Anschuetz failed to articulate any basis for the denial, instead wholly ignoring the request, despite acknowledging that the evidence was new and material to the prior case. (*See* Tr. at 15-25, 67). The failure to discuss the request to reopen cannot be deemed harmless given that, under the SSA's regulations, one basis for reopening a prior determination is the furnishing of new and material evidence. *See* 20 C.F.R. § 416.1489.

While it is possible that ALJ Anschuetz considered the request to reopen and properly denied it, the Court cannot make such a finding. Rather, because ALJ Anschuetz failed to articulate any basis for the implicit denial, the Court "cannot

meaningfully review whether 'the proper legal analysis has been conducted,' including, but not limited to, whether the ALJ complied with regulations on reopening." *See Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Passopulos v. Sullivan*, 976 F.2d 642, 646 (11th Cir. 1992))).  As a result, the Court finds remand is required for the Commissioner to explicitly consider Plaintiff's request that the April 17, 2019 decision be reopened.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds remand is required for the Commissioner to explicitly consider Plaintiff's request that the April 17, 2019 decision be reopened.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    On remand, the Commissioner must:

(1) review the entire evidence of record; and (2) explicitly consider Plaintiff's request that the April 17, 2019 decision be reopened.

3.    Any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

4.      The Clerk of Court is directed to enter judgment accordingly, to

terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 14, 2022.

_____

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

21